UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| REGINA TERWILLIGER, on behalf of herself and all Others similarly situated, | CASE NO. _____ |
| Plaintiffs, | **NOTICE OF REMOVAL** |
| v. | |
| HITACHI AMERICA, LTD., | |
| Defendant. | |

**PLEASE TAKE NOTICE** that Defendant Hitachi America, Ltd. ("HAL" or "Defendant") hereby removes the subject action from the Supreme Court of the State of New York, County of Wayne, to the United States District Court for the Western District of New York.

<b>Complaint</b>

1.      On or about February 22, 2011, Plaintiff Regina Terwilliger ("Plaintiff"), acting on her own behalf and as proposed representative of a class of persons allegedly similarly situated, filed this action, entitled *Terwilliger v. Hitachi America, Ltd.*, Case No. 72447 in the Supreme Court of the State of New York, County of Wayne (the "Terwilliger Action" or "state court action").  On February 25, 2011, Defendant was served with a copy of the Summons and Complaint in the state court action.  True and correct copies of the Summons and Complaint served on Defendant are attached hereto as Exhibit A.

2.      Defendant is informed and believes that the Summons and Complaint are the only pleadings filed in the state court action.  Defendant has not yet filed an answer or any other responsive pleading.

## Summary of Basis for Removal

3.      Defendant removes this action pursuant to the Class Action Fairness Act of 2005 and Rule 19 of the Federal Rules of Civil Procedure.  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A) on the basis that (a) this action is a proposed "class action" as defined in 28 U.S.C. § 1332(d)(1)(B), (b) the amount in controversy is in excess of $5 million, and (c) all members of the proposed class of plaintiffs in this action are citizens of a state (New York) different from **two necessary parties** (California and Japan) to the action.

4.      This action is not subject to the Home State Exception or the Local Controversy Exception to jurisdiction under the Class Action Fairness Act set forth, respectively, in 28 U.S.C. §§ 1332(d)(4)(B) and 1332(d)(4)(A).

a.      The Home State Exception applies where two-thirds of the class members and the "primary defendants" are citizens of the state in which the action was filed.  28 U.S.C. § 1332(d)(4)(B).   But, as discussed further below, once necessary parties are factored, the primary defendants are Hitachi, Ltd. (Japan), Hitachi Home Electronics (America), Inc. (California), and HAL (New York).  Since the primary defendants are not all New York citizens, the Home State Exception does not apply.  *See* Decl. of N. Svalstad (detailing California state of incorporation and principal place of business for Hitachi Home Electronics (America), Inc.); Answer to First Amended Class Action Complaint in the related proceeding *In re Hitachi Television Optical Block Cases* ("Answer"), ¶ 9 (admitting that Hitachi, Ltd. is a Japanese corporation and has its principal place of business in Japan), a true and correct copy of which is attached hereto as Exhibit B.

2

b.      The Local Controversy Exception applies when all of the following are true:  i) more than two thirds of the members of the class are citizens of the state in which the action was filed; ii) at least one defendant who is a citizen of the state in which the action was filed is a defendant "from whom significant relief is sought" and "whose alleged conduct forms a significant basis for the claims asserted;" iii) the members of the class incurred principal injuries resulting from the alleged conduct of each defendant in the state in which the action was filed; and iv) "**during the 3-year period preceding the class action, no other class action has been filed asserting the same or similar factual allegation against any of the defendants.**"  28 U.S.C. § 1332(d)(4)(A) (emphasis added).

c.      But, as discussed further below, and among other grounds, multiple pending proposed class actions have been filed against the three listed entities – Hitachi, Ltd. (Japan), Hitachi Home Electronics (America), Inc. (California), and HAL (New York) – asserting the identical factual claim asserted herein, that defendant(s) designed, manufactured, and distributed defective Hitachi-brand LCD Rear Projection televisions:  *Lingle* Complaint, Case No. 08cv1746 DMS (NLS) (Southern District of California), *Markee* Complaint, Case No. 08cv2314 BEN (SLP) (Southern District of California), *Braswell* Complaint, Case No. 10cv1767 DMS (NLS) (Southern District of California), *Musial* Complaint, Case No. 11CH05835 (Northern District of Illinois).  A true and correct copy of each complaint is attached, respectively, hereto as Exhibits C, D, E, and F.

3

d.      Counsel in this matter have further advised defendants that additional complaints have been filed or will shortly be filed in New Jersey, Michigan, and Florida (and possibly other states).

5.      Since other actions, asserting factually identical allegations, initiated within the past three years, are currently pending in multiple jurisdictions throughout the United States, the Local Controversy Exception does not apply.

6.      Accordingly, Defendant is entitled to removal under 28 U.S.C. § 1441(a).

**Procedural Background**

7.      The Terwilliger Action is not a standalone proceeding.  It is just the latest episode in a long running saga that began in the Summer of 2008.  Plaintiff's complaint is part of a nationwide series of class actions filed against Hitachi, Ltd., Hitachi Home Electronics (America), Inc., and Hitachi America, Ltd. alleging that LCD Rear Projection televisions primarily designed by Hitachi, Ltd., manufactured by a factory owned by a subsidiary of Hitachi Home Electronics (America), Inc., and primarily distributed (not retailed) by Hitachi America, Ltd., are defective.

8.      All of the cases have been filed by lead counsel, Jeffrey Koncius and Robert I. Lax ("Lead Counsel"), who are listed as additional counsel for the Terwilliger Action.  Messrs. Koncius and Lax (and others) initially filed a proposed nationwide class action lawsuit in the Southern District of California in August 2008 (the "*Lingle*" case).  Subsequently filed proposed class action cases regarding the same television models, the *Markee* and *Braswell* complaints, respectively, were consolidated for pre-trial proceedings, under the case title *In re Hitachi*

4

*Television Optical Block Cases*.  A true and correct copy of the Consolidation Order is attached hereto as Exhibit G.

9.      The Court in the *In re Hitachi Television Optical Block Cases* **denied** Lead Counsel's motion for certification of a nationwide class on January 3, 2011.  (The Court reserved judgment for a future day as to whether a state-specific class or multiple state-specific classes could be certified.)  A true and correct copy of the Court's January 3, 2011 Order is attached hereto as Exhibit H. Lead Counsel have received permission to file a motion for reconsideration of that ruling, which is tentatively scheduled to be heard on either May 6 or May 27, 2011.  The parties are still working out a schedule with the Court.

10.      Lead Counsel in the *In re Hitachi Television Optical Block Cases* have indicated their intent, in the alternative (if their motion for reconsideration of the nationwide class ruling is denied), to pursue state-specific proceedings in jurisdictions throughout the United States.  *See* Joint Statement Regarding Schedule in *In re Hitachi Television Optical Block Cases* at 3, a true and correct copy of which is attached hereto as Exhibit I.  Lead Counsel has begun to implement that plan.

a.      Lead Counsel filed a motion in the Southern District of California, in the original consolidated *In re Hitachi Television Optical Block Cases*, for certification of a class of California purchasers.  All three of the consolidated Complaints named all three entities: Hitachi, Ltd., Hitachi Home Electronics (America), Inc., and HAL.  *See* Complaints, Exhibits C, D, and E, hereto.  A true and correct copy of Lead Counsel's Motion is attached hereto as Exhibit J. Lead Counsel's Motion for certification of a California purchaser class is being taken off calendar pending the Court's ruling on Lead Counsel's motion for reconsideration of the Court's January 3, 2011 order denying certification of a nationwide class.

b.      Lead Counsel filed a state court proceeding in Cook County, Illinois on February 16, 2011 (the "Illinois Action") seeking certification of a class of Illinois purchasers of the televisions.  The Illinois Action named all three entities, Hitachi, Ltd., Hitachi Home Electronics (America), Inc., and Hitachi America, Ltd., as defendants.  *See* Exhibit F.  The Illinois Action was removed to the District Court for the Northern District of Illinois on March 18, 2011.

c.      Lead Counsel also filed the instant Terwilliger Action seeking certification of a class of New York purchasers of the televisions.

d.      Lead Counsel further have purportedly filed state court proceedings in New Jersey, Michigan, and Florida, and possibly other states.  Defendants' counsel met and conferred with Lead Counsel Koncius on March 24, 2011 following a deposition in the *In re Hitachi Television Optical Block* cases in which Lead Counsel indicated that those filings were in process, but that he could not confirm if they had been filed or served yet.   Defendants have been advised that each of these actions would seek relief on behalf of a state-specific class of plaintiffs.  Defendants are informed and believe that each of these actions names all three entities, Hitachi, Ltd., Hitachi Home Electronics (America), Inc., and Hitachi America, Ltd., as defendants.  *See, e.g.,* Docket Report for the purported New Jersey action, a true and correct copy of which is attached hereto as Exhibit K.

e.      The Terwilliger Action is the **only** related proceeding in this nationwide collection of lawsuits that does not name Hitachi, Ltd. and Hitachi Home Electronics (America), Inc. as defendants.  As Lead Counsel Lax put it during a meet and confer following the filing of the Terwilliger Action – that was "no accident."  Lead Counsel specifically omitted Hitachi, Ltd. and Hitachi Home Electronics (America), Inc. to prevent defendants from removing the action to

6

federal court, where it could be transferred to the Southern District of California and coordinated with the other television cases.  Indeed, Lead Counsel's actions were designed to circumvent their own agreed stipulated consolidation order.  *See* Consolidation Order, Exhibit G hereto.

1)      Paragraph I.B. of the jointly agreed Consolidation Order (Exhibit G hereto) in the *In re Hitachi Television Optical Block Cases* provides:  "[t]he Court and parties consent to the transfer of Related Actions, as that term is defined in Section IV, to this court pursuant to Local Rule 40.1."

2)      Paragraph IV of the same Order provides that "[a]ny proposed class action, filed in any United States District Court, against one or more of the defendants, alleging a defect in the optical block of Hitachi-brand LCD Rear Projection television shall be deemed a 'Related Action.'"

### Removal Based on Necessary Parties

11.      The Class Action Fairness Act, however, is not so easily circumvented.

12.      The Court must consider the existence of necessary, but unnamed defendants when determining whether the minimal diversity required by 28 U.S.C. § 1332(d)(2) has been satisfied.  The Northern District of Illinois reached this exact conclusion in *Roche v. Country Mut. Ins. Co.*, CIV. 07-367-GPM, 2007 WL 2003092, at *3 (S.D. Ill. July 6, 2007) (unpublished) (emphasis added):

> It is well settled that, where a non-diverse party is required to be joined under Rule 19, a district court is placed in effectively the same position as though jurisdiction never existed. "Although

7

jurisdiction will not be ousted by a subsequent change in parties who are ancillary to the suit and whose presence ... is not essential to an adjudication on the merits, a change in parties that goes to the very essence of the district court's ability to adjudicate the merits of the dispute effectively-most notably the addition of indispensable parties-may destroy it." 14B Charles Alan Wright, Arthur R. Miller, Edward H. Cooper & Joan E. Steinman, *Federal Practice & Procedure* § 3723 (3d ed. 1998 & Supp.2007) (footnotes omitted) (collecting cases). *See also Vasilakos v. Corometrics Med. Sys., Inc.*, No. 93 C 5343, 1993 WL 390283, at *2 (N.D.Ill. Sept. 30, 1993) (a post-removal joinder of a mandatory non-diverse party requires remand, whereas leave to join non-mandatory parties that defeat diversity after removal is discretionary). The Court has not been able to locate a case that addresses the precise issue presented by this case, namely, whether post-removal joinder of a mandatory party can create minimal diversity of citizenship for CAFA purposes. **However, the Court sees no principled distinction between, on the one hand, destruction of jurisdiction by the joinder of a mandatory party and, on the other hand, creation of jurisdiction by such joinder. Accordingly, the Court concludes that Country's argument for federal subject matter jurisdiction does not violate the rule that the existence of such jurisdiction must be evaluated as of the time of removal and will proceed to address the argument on its merits.**

13.     This conclusion, as noted in the *Roche* decision itself, is fully consistent with the well-settled principle that the joinder of necessary parties can divest the Court of diversity jurisdiction. *See, e.g.*, *Takeda v. Nw. Nat'l Life Ins. Co.*, 765 F.2d 815, 821-22 (9th Cir. 1985) (remanding the action to state court after concluding that a corporation was "a necessary party under rule 19(a)"); *Hargrove v. Clark Equip. Co.*, No. 84 Civ. 3927 (RLC), 1884 WL 1377 (S.D.N.Y. Dec. 26, 1984) ("[T]he law is clearly settled that in diversity cases . . . indispensable parties must be joined, sua sponte if need be, even though to do so destroys complete diversity of citizenship of the parties and ousts federal courts of jurisdiction[.]" (citing *Jett v. Zink*, 363 F.2d 723, 726 (5th Cir. 1966)).

8

14.     Defendant has found no cases holding that necessary, but unnamed parties should not be considered in the removal analysis.

15.     And, as noted in *Roche*, there is "no principled distinction between, on the one hand, destruction of jurisdiction by the joinder of a mandatory party and, on the other hand, creation of jurisdiction by such joinder."  *See Roche*, 2007 WL 2003092, at *3.

### Hitachi, Ltd. and Hitachi Home Electronics (America), Inc. Are Necessary Parties

16.     Federal Rule of Civil Procedure 19 provides:

> (a)(1) A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
>> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>>
>> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>>
>>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>>>
>>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

17.     The clearest evidence that Hitachi, Ltd. and Hitachi Home Electronics (America), Inc. are necessary parties is that Lead Counsel named them as defendants when they sought to certify a nationwide class of purchasers, **including New York purchasers,** of the televisions.

9

18.     Lead Counsel, moreover, continued to acknowledge the necessity of these entities in the other actions they have filed pursuing state-specific classes or individual actions regarding the same televisions.  Lead Counsel have named the **same** three defendants in every other action they have filed in connection with the televisions at issue – including actions filed on behalf of California, Illinois, Ohio, Colorado, and South Carolina purchasers (and purportedly New Jersey, Michigan, and Florida purchasers as well).  *See, e.g.,* Ex. C (*Lingle* plaintiffs from Ohio and Colorado), Ex. E (*Braswell* plaintiff from South Carolina), Ex D (*Markee* plaintiffs from California).  In doing so, in multiple jurisdictions, Lead Counsel certified under Rule 11 or the state law equivalent, that their "claims" against Hitachi, Ltd. and Hitachi Home Electronics (America), Inc. with respect to the televisions "are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law" and that their "factual contentions have evidentiary support."  Fed. R. Civ. Proc. 11(b). What makes New York purchasers different?  To ask the question is to answer it.  (Defendants vigorously dispute the merits of the allegations in all of the cases.)

19.     Lead Counsel and Plaintiff, moreover, as fiduciaries to the purported class of New York purchasers, have an obligation to seek all the relief to which counsel and the proposed representative Plaintiff, consistent with Rule 11 or the New York state equivalent, believe the proposed class is entitled.  Their decision to omit Hitachi, Ltd. and Hitachi Home Electronics (America), Inc. sacrifices potential claims solely to prevent federal jurisdiction – claims that Lead Counsel thought were appropriately asserted on behalf of every other citizen of every other state (and the citizens of New York when nationwide certification was sought).  That is improper.

20.     The necessary status, under Rule 19, of Hitachi, Ltd. and Hitachi Home Electronics (America), Inc. is further readily apparent in the allegations set forth in the Terwilliger Complaint:

a.     Plaintiff alleges, at Paragraph 1, that "the Televisions possess a characteristic and inherent defect in a component known as the Optical Block (the "Defect"). The Defect causes a video anomaly that causes the Televisions to display colored haze, spots and streaks which cover the programming on the television screen.  Plaintiff alleges that Defendant knew or should have known of the Defect at the time Defendant placed the Televisions into the stream of commerce in this jurisdiction."  Plaintiffs' defect and knowledge claims are directed at Hitachi, Ltd. – the company that primarily designed the televisions.  *See* Terwilliger Compl., ¶11f ("Defect constitutes a manufacturing or design defect"), ¶22-25 (describing purported defect),[1] January 3, 2011 Order in *In re Hitachi Television Optical Block Cases* at 10.  Plaintiff alleges that Hitachi America, Ltd. "has known about the Defect contained in the Televisions since almost immediately after their introduction to the market and likely even earlier.  *See* Terwilliger Compl., ¶31.  (It is noteworthy that this same exact allegation (nearly verbatim) was made against **all three entities** in all of the other complaints filed to date.  *See Lingle* Compl., ¶ 19, Ex. C hereto; *Markee* Compl., ¶ 16, Ex. D hereto; *Braswell* Compl., ¶ 18, Ex. E hereto; *Musial* Compl., ¶ 21, Ex. F.)

b.     Plaintiff likewise alleges, at Paragraph 26, that certain patents indicate "Defendant's institutional awareness of the problems of heat and radiation in its Optical Engine design."  This is "demonstrated by disclosures made by **Defendant's engineers** in connection

_____

[1] All (or most) of the purported "Federal Admissions" listed in Plaintiff's complaint were made in declarations filed by the engineers who designed the televisions at Hitachi, Ltd.  These declarations were filed in opposition to a motion for certification of a nationwide class.

11

with various patent applications it filed with the United States Patent Office." *Id.* (emphasis added).  But the patents in question were filed by **Hitachi, Ltd.**

c.      Plaintiff further alleges, at Paragraph 26, "that prior to the sale of the Televisions, Defendant had successfully designed an LCD rear projection television incorporating liquid cooling to protect against excess heat, but liquid cooling was not incorporated into the Televisions sold to consumers in the United States, which failed as a result. But whatever the relevance of those televisions, Hitachi America, Ltd. did not design them, as it did not even employ any television engineers.  Hitachi, Ltd. engineers designed those televisions.

d.      Plaintiff alleges, at Paragraph 7, that "Defendant Hitachi America, Ltd.….imports, distributes, and/or markets the Televisions containing the Defect, and causes the Televisions to be placed into the stream of commerce in this County and State" **"directly and through its agents, Hitachi Home Electronics (America), Inc., and Hitachi Ltd."** (emphasis added.)  Plaintiff's allegations concede the critical role of those entities to these proceedings.

e.      Plaintiff alleges, at Paragraph 29, that "Defendant's overall malfeasance in designing, manufacturing, distributing…" the televisions caused damage to the class.  *See also id.* at ¶ 32 ("Defendant, as a designer, manufacturer, marketer…").  But Defendant Hitachi America, Ltd. did not design or manufacture the televisions.  Hitachi, Ltd. primarily designed the televisions, and a subsidiary of Hitachi Home Electronics (America), Inc. manufactured them.

3678736.1

       f.      Plaintiff alleges, at paragraphs 11k and 40, that Defendant spoliated evidence:

> Not only has Defendant not been forthright with the Class regarding the existence of the Defect or the expected degeneration of the Optical Engines, but also it has additionally failed to preserve…evidence which would be relevant to the facts herein….For example, the Chief Optical Engineer of Quality Assurance of Defendant's plant which assembled the Televisions…purposefully deleted electronic documents.

The acts in question and the significance of the alleged destruction are hotly disputed. The parties in the *In re Hitachi Television Optical Block Cases* are presently briefing that exact issue, with a hearing tentatively scheduled for either April 21 or May 6, 2011. But the critical point is that the person in question (Mr. Kato) was **never** employed by Hitachi America, Ltd. He worked for Hitachi, Ltd. and was seconded to Hitachi Home Electronics (America), Inc. when the televisions were being manufactured. (He also worked for another entity later in time.) Plaintiff alleges that the document destruction is a critical issue in the case, but her agency theory of responsibility can only be asserted against the purported employers/principals of Mr. Kato. Thus. Hitachi, Ltd. and Hitachi Home Electronics (America), Inc. are necessary parties to Plaintiff's spoliation theory of liability.

      21.     Plaintiff, in sum, wants to lump all three entities together when it comes to making evidentiary allegations, but drop Hitachi, Ltd. and Hitachi Home Electronics (America), Inc. from the jurisdictional equation. Plaintiff cannot have it both ways.

      22.     Hitachi, Ltd. and Hitachi Home Electronics (America), Inc. are necessary parties. "Complete relief among [the] existing parties" cannot be afforded without their presence in the action. And resolution of claims against Hitachi America, Ltd. alone could, "as a practical

matter impair or impede" the other entities' ability to defend themselves in the other cases or future proceedings.

## Jurisdiction

23.     Once Hitachi, Ltd. and Hitachi Home Electronics (America), Inc. are considered as part of the removal analysis, it is clear that removal jurisdiction exists.

24.     Defendant is informed and believes, and on that basis avers, that Plaintiff and at least two-thirds of the proposed class of plaintiffs are citizens of the State of New York. Complaint, ¶¶ 6, 8.  Plaintiff Terwilliger alleges that she is a citizen of New York and limits the proposed class to persons who "purchased the Televisions within the State of New York." Complaint, ¶¶ 6, 8.

25.     Defendant Hitachi America, Ltd., at the time the state court action was commenced, was and still is a corporation incorporated under the laws of the State of New York, with its principal place of business in New York, and is still a New York citizen for purposes of this notice as of the date of filing this notice.  Complaint, ¶ 6; *see also* Decl. of T. Lim (attaching evidence of New York incorporation and principal place of business).

26.     Plaintiff's proposed definition of the class surely includes some non-New York citizens.  Citizens of surrounding states (particularly near the borders) may have purchased a television in New York.  And, of course, persons who were citizens of New York at the time of purchase have moved and become citizens of other states since the purchase – most of which were made many years ago.  Either circumstance alone is sufficient to satisfy the minimal diversity requirement.  (Defendant, however, acknowledges that the addition and consideration

14

of the necessary parties is critical to prevent application of the Home State Exception to jurisdiction.)

27.     Necessary party defendant Hitachi Home Electronics (America), Inc., at the time the state court action was commenced, was and still is a corporation incorporated under the laws of the State of California, with its principal place of business in California, and is still a California citizen for purposes of this notice as of the date of filing this notice.  *See* Decl. of N. Svalstad (attaching evidence of California incorporation and principal place of business).

28.     Necessary party defendant Hitachi, Ltd., at the time the state court action was commenced, was and still is a corporation incorporated under the laws of Japan, with its principal place of business in Japan, and is still a foreign corporation for purposes of this notice as of the date of filing this notice.  *See* Answer, ¶ 9 (admitting Japan incorporation and principal place of business), Exhibit B hereto.

29.     Plaintiff and the proposed class seek more than $5,000,000 in relief.

a.     Plaintiff and the proposed class seek, among other relief, "compensatory damages" and "treble damages."  Terwilliger Compl., ¶18, ¶ 11i (claiming restitution), ¶39 ("suffered a loss of money or property for having paid thousands of dollars for a product that does not…work").  Plaintiff and the proposed class further allege that each television retailed for as much as "$3,000 or more."  Terwilliger Compl., ¶ 2.  While retail prices varied somewhat, Defendant does not dispute that this product was sold in that price range.

15

    b.  None of the Defendants or necessary party defendants retailed the product in question directly to end user purchasers.  Instead, the appropriate distributing entity sold the televisions to resellers (e.g., Sears) for re-sale to their customers.  Shipping records indicate that at least 2,911 Hitachi-brand LCD Rear Projection televisions were shipped to New York stores for re-sale in New York.  (This figure does not include units shipped to certain nationwide retailers who had all of their units shipped to one or more distribution centers for re-routing to their store locations.  A certain percentage of these units were then re-shipped to New York locations.  As such, the actual number of units ultimately sold in New York is actually greater.)  Decl. of D. Chambers, ¶¶ 2-4.  The number of units sold in New York, multiplied by the alleged $3,000 price per unit, easily satisfies the $5,000,000 requirement.

    c.  Plaintiffs further seek an injunction, attorneys' fees, and other relief – prayers that leave no doubt that the amount in controversy exceeds $5,000,000.  Complaint, ¶ 18.


   30.  The Home State and Local Controversy Exceptions to Class Action Fairness Act jurisdiction do not apply.


    a.  The Home State Exception applies where two-thirds of the class members and the "primary defendants" are citizens of the state in which the action was filed.  28 U.S.C. § 1332(d)(4)(B).   But once necessary parties are factored, the primary defendants are Hitachi, Ltd. (Japan), Hitachi Home Electronics (America), Inc. (California), and HAL (New York).  Since the primary defendants are not all New York citizens, the Home State Exception does not apply.

16

b.      The Local Controversy Exception applies when all of the following are true:  i) more than two thirds of the members of the class are citizens of the state in which the action was filed; ii) at least one defendant who is a citizen of the state in which the action was filed is a defendant "from whom significant relief is sought" and "whose alleged conduct forms a significant basis for the claims asserted;" iii) the members of the class incurred principal injuries resulting from the alleged conduct of each defendant in the state in which the action was filed; and iv) **"during the three-year period preceding the class action, no other class action has been filed asserting the same or similar factual allegation against any of the defendants."** 28 U.S.C. § 1332(d)(4)(A) (emphasis added).

c.      But, as discussed extensively above, and among other grounds, multiple pending proposed class actions have been filed against the three listed entities asserting the identical factual claim asserted herein.  *See* Exhibits C, D, E, and F.

d.      Plaintiffs' counsel in this matter have further advised defendants that additional complaints have been filed or will shortly be filed in New Jersey, Michigan, and Florida (and possibly other states).

e.      Since other actions, asserting factually identical allegations, initiated within the past three years, are currently pending in multiple jurisdictions throughout the United States, the Local Controversy Exception does not apply.

17

**Procedural Requirements**

31.     A copy of the written notice required by 28 U.S.C. 1446(d) addressed to the adverse party and to the Clerk of the New York Supreme Court, Wayne County is attached as Exhibit L and will be filed in the state court action and forwarded to plaintiff's counsel prior to the filing of this Notice of Removal.

32.     The undersigned has read this Notice of Removal, and, to the best of the undersigned's knowledge, information and belief, formed after reasonable inquiry, it is well-grounded in fact, is warranted by existing law, and is not interposed for any improper purpose, such as to harass, to cause unnecessary delay, or needlessly to increase the cost of litigation.

33.     Accompanying this Notice of Removal are a Civil Cover Sheet and a check in the amount of $350.00 for the required filing fee.

34.     WHEREFORE, Defendant and necessary party defendants respectfully request that the state court action now pending be removed to and proceed in this Court, and that no further proceedings be held in the state court action.

18

DATED:  March 28, 2011

LAUREN J. WACHTLER
MITCHELL SILBERBERG & KNUPP LLP

By: _____

Attorneys for Defendant Hitachi America,
Ltd.
Mitchell Silberberg & Knupp LLP
12 East 49th Street, 30th Floor
New York, New York 10017-1028
Telephone: (212) 509-3900
ljw@msk.com

**INDEX OF ALL FILED DOCUMENTS IN CASE NO. 72447**

| Exhibit No. | Description | Filed Date |
|---|---|---|
| 001…………………………..Summons…………………………………………....02-25-11 | | |
| 002…………………………..Complaint…………………………………………....02-25-11 | | |

.

# EXHIBIT 1

STATE OF NEW YORK
SUPREME COURT                    COUNTY OF WAYNE

REGINA TERWILLIGER, on behalf of herself and all
Others similarly situated,

                                                    Plaintiffs,

                       - vs -

HITACHI AMERICA, LTD.,

                                                    Defendants.

**SUMMONS**

Index No. _____ 72417

*(stamp: WAYNE COUNTY CLERK'S OFFICE  2011 FEB 22  PM 4: 27)*

      **YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve

a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of

appearance, on the plaintiff's attorney(s) within 20 days after service of this summons, exclusive

of the day of service, where service is made by delivery upon you personally within the state, or

within 30 days after completion of service where service is made in any other manner.  In case of

your failure to appear or answer, judgment will be taken against you by default for the relief

demanded in the complaint.

      Plaintiff designates Wayne County as the place of trial.

      The basis of the venue is the residence of the plaintiff.

Dated: February 22, 2011
      Rochester, New York

CALIHAN LAW PLLC

By:    Robert B. Calihan
        Attorneys for Plaintiffs
        16 West Main Street
        Suite 761
        Rochester, New York 14614
        Telephone: (585) 281-2593
        Facsimile: (585) 232-5009

Served
By
**SERVICO**
www.servico.com
Specialists in all
Legal papers

# EXHIBIT 2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WAYNE

-------------------------------------------------------------------x

REGINA TERWILLIGER, on behalf of herself and all
Others similarly situated,

                Plaintiff,

       -against-

HITACHI AMERICA, LTD.,

                Defendant.

-------------------------------------------------------------------x

INDEX NO.   *72447*

**CLASS ACTION
COMPLAINT**

2011 FEB 22 PM 27

WAYNE COUNTY
CLERK'S OFFICE

      Plaintiff Regina Terwilliger ("Plaintiff"), by and through her undersigned attorneys, brings

this Class Action Complaint against the above named defendant, its employees, agents, and

successors, and in support thereof alleges the following:

## PRELIMINARY STATEMENT

     1.    Plaintiff brings this action on behalf of herself and all others similarly situated

within the State of New York, for damages arising from Defendant's culpable conduct as defined

by General Business Law (hereinafter G.B.L.) §§349 and 350, and breach of implied warranties.

Plaintiff and the Class seek injunctive and monetary relief to redress a systemic consumer fraud

involving the sale and marketing of Hitachi LCD Rear Projection Televisions (the

"Televisions"). Plaintiff alleges that the Televisions possess a characteristic and inherent defect

in a component known as the Optical Block (the "Defect"). The Defect causes a video anomaly

that causes the Televisions to display colored haze, spots and streaks which cover the

programming on the television screen. Plaintiff alleges that Defendant knew or should have

known of the Defect at the time Defendant placed the Televisions into the stream of commerce in

this jurisdiction. Defendant has compounded its improper sale of the defective Televisions – in which Defendant failed to disclose this known defect -- by acting in contravention of applicable warranty laws and refusing to honor its obligation to repair the Defect without cost to members of the Class.

2.      As such, Defendant has perpetuated a consumer fraud upon unsuspecting citizens of New York who purchased the Televisions by misrepresenting the character and quality of the Televisions, and in failing to disclose the known Defect which would render the Televisions worthless and/or require expensive repairs.  Defendant marketed these Televisions as high-end videophile devices, with a high definition picture far superior to that provided by a standard television. These claims were untrue, in light of the Defect.  By making these untrue claims, and by failing to disclose the Defect or the need to repair it, Defendant was able to command suggested retail prices for these units of approximately $3,000.00, or more.  In fact, however, the Defect contained in the Televisions, and the visual anomalies that it causes to appear on the screen, severely impair the Televisions' value to consumers.

3.      Defendant's misleading representations and deceptive business practices relating to the Televisions allowed Defendant to artificially raise demand for its product, allowing it to charge prices consumers would otherwise be willing to pay.  Plaintiff and the Class have therefore been deceived into paying a premium for a product which they might not otherwise have purchased at all, had they been aware of their true capabilities – or lack thereof.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over the Defendant pursuant to CPLR § 301, as the Defendant transacts business within the state, and has committed tortious acts within the state.

2

5.      Venue is proper in this County pursuant to CPLR § 503(c).

## PARTIES

6.      Plaintiff Regina Terwilliger was at all times relevant to this Complaint a citizen of New York, residing in the County of Wayne. Plaintiff acquired a defective version of the Television from an authorized Hitachi sales agent during the class period.

7.      Defendant Hitachi America, Ltd. (hereinafter "Defendant" or "Hitachi"), is a New York corporation, with its principal offices located at 2000 Sierra Point Parkway, Brisbane, California. Defendant directly and through its agents, Hitachi Home Electronics (America), Inc., and Hitachi Ltd., imports, distributes, and/or markets the Televisions containing the Defect, and caused the Televisions to be placed into the stream of commerce in this County and State.

## CLASS ACTION ALLEGATIONS

8.      Plaintiff brings this action on her own behalf and as a Class action, pursuant to CPLR § 901, on behalf of all persons who have purchased the Televisions within the State of New York, as of the date of this Complaint, and their successors in interest. Excluded from the Class are the Defendant herein, and any person, firm, trust, corporation, or other entity related to or affiliated with the Defendant, including, without limitation, persons who are employees, officers, or directors of Defendant.

9.      This Class satisfies the numerosity, commonality, typicality, adequacy and superiority requirements of CPLR § 910 for maintaining a class action.

10.     The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time, it is ascertainable by appropriate discovery, and Plaintiff is informed and believes that the Class includes thousands of members.

3

11.     There are questions of law and fact that are common to the Class. Those common questions predominate over any questions that might affect any individual Class member. These common questions of law and fact include, without limitation:

  a.  Whether Defendant's representations, omissions, and conduct regarding the Televisions were misleading or false;

  b.  Whether Defendant's representations and conduct were likely to deceive consumers into believing that the Televisions operated properly;

  c.  Whether Defendant violated GBL §§ 349 and 350 and/or the Magnuson-Moss Consumer Warranty Act, 15 U.S.C. §2301 et seq.;

  d.  Whether Defendant engaged in deception in marketing the Televisions;

  e.  Whether Defendant undertook a course of conduct to hide the existence of the Defect from the members of the Class;

  f.  Whether the Defect constitutes a manufacturing or design defect;

  g.  Whether the Defect constitutes a breach of Defendant's warranties;

  h.  Whether the members of the Class have been injured by Defendant's conduct;

  i.  Whether the members of the Class have sustained damages and are entitled to restitution as a result of Defendant's wrongdoing and, if so, the proper measure and appropriate formula to be applied in determining such damages and restitution;

  j.  Whether the members of the Class are entitled to injunctive relief; and

  k.  Whether the members of the Class have sustained damage as a result of Defendant's spoliation of relevant evidence and, if so, the proper remedy for such spoliation.

12.     A class action is superior to other methods for the fair and efficient adjudication of the

4

claims of Plaintiff and the Class.  Plaintiff anticipates that no unusual difficulties are likely to be encountered in the management of this class action.

13.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  The claims of Plaintiff are typical of the claims of other members of the Class and Plaintiff share identical interests with the other Class members. Accordingly, Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class members.

14.     The promotion and marketing of the Televisions took place through a common course of conduct that involved, among other things, standardized marketing plans and representations. Pursuant to those policies, which were established and implemented by Defendant, Defendant misrepresented facts and omitted material information, and erroneously stating or implying that the televisions were capable of excellent video quality, which in fact they are not.  As a result, the common issues that affect Plaintiff and the Class predominate over any issue that might affect any individual Class member.

15.     As the damages suffered by each individual member of the Class may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual members of the Class to redress the wrongs done to them.  The cost to the court system of adjudication of such individualized litigation would be substantial.

16.     In addition, the prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual Class members which would establish incompatible standards of conduct for Defendant.  By contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves the resources of

5

the parties and the courts, and protects the rights of each Class member.

17.     Defendant has acted on grounds generally applicable to the entire Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

## STATEMENT OF FACTS

18.     High Definition Television ("HDTV") refers to a method of portraying television images in high resolution, with a high degree of picture detail and accuracy.  As such, HDTV televisions command prices several times higher than those for common standard definition television sets. Consumers purchasing HDTV televisions therefore pay, and have historically paid, a significant premium for the ability to enjoy the high quality picture such television sets offer.

19.     Defendant marketed the Televisions as high end consumer electronic devices purportedly offering superior picture quality, and capable of taking full advantage of HDTV programming and reproducing video programs with a clear picture and accurate color reproduction. What Defendant misrepresented, omitted to disclose and concealed from the general public, however, was the fact that Defendant knew that the Televisions would exhibit the anomalies on the Television screen due to the Defect contained in the Optical Block.  These omissions of material fact have allowed Defendant to command premium prices for these Televisions, as much as $3,000.00 or more, as well as to successfully market the Televisions as suitable for the most discerning videophiles seeking accurate color reproduction at the highest resolutions and fidelity possible.

20.     Unfortunately, rather than displaying the excellent video playback consumers paid so dearly for, the Televisions instead display colored haze, spots and streaks which cover the programming on the television screen. These video artifacts obscure the picture, distort the color,

and diminish the detail of the image, rendering the Televisions entirely unusable for the purposes for which they were intended by consumers, thereby breaching the implied warranty of fitness for a particular purpose. Based upon the express and implied warranties, false representations, and omissions and/or concealment of material facts by Defendant, Plaintiff and the Class members purchased the Televisions containing the Defect for personal use, and have suffered damages as a result.

21.     The colored haze, spots, and streaks are caused by a condition in the Televisions' Optical Blocks which projects the unwanted video and color anomalies on the screen. The Optical Block is the video component that causes the video signal to be displayed as a picture on the viewing screen.

22.     Specifically, the Optical Blocks (or, sometimes referred to as "Optical Engines") within the Televisions suffer from a design defect which fails to mitigate the excess heat, ultra-violet and infra-red radiation which are produced in the normal course of using the Televisions, which damages the sensitive optical and electronic components inside the device. To have a bright vivid picture, a high output light source capable of transmitting light throughout the entire visible spectrum is required to project the image onto the screen. Defendant used lamps for this purpose. However, the lamps utilized by Defendant in the Televisions produce large amounts of heat and transmit light not only in the visible spectrum, but also in the invisible spectrums - ultraviolet and infrared - which run up against the visible blue and red spectrums of light. Heat, ultraviolet and infrared light all transmit heat to the components in their path. Also, ultraviolet light works to destroy components because UV photons break or rearrange bonds in many materials. Here, Defendant's Optical Blocks

utterly failed to mitigate these destructive forces and contained components unable to resist them thus causing the Televisions to fail and to experience the Defect.

23.     The Optical Blocks in the Televisions are all unable to properly mitigate the effects of the excess heat, excess ultraviolet light, and excess infrared light which is produced by the ultra-high output incandescent light source utilized in all of these devices.  Lacking a design which can properly mitigate this heat and wide spectrum light, or Optical Block components designed to withstand these destructive forces, the delicate Optical Block components - particularly the LCD Panels and simple polymer polarizers - immediately begin to deteriorate from the first time the Televisions are used, until the damage accumulates to the point where the Televisions malfunction well prior to their reasonable and expected lifetime.

24.     Defendant has made admissions regarding the foregoing problems in other litigation in filings Defendant made with the United States District Court for the Southern District of California, *In Re Hitachi Television Optical Block Cases*, U.S.D.C Case No. 08 CV 1746 DMS (NLS) (the "Federal Admissions").  Included amongst Defendant's Federal Admissions made in filings in that matter, is the fact that the optical components in the Optical Engine do in fact deteriorate as a matter of design, and that the Optical Engine is expected to wear out within the expected useful life of the Televisions, requiring this expensive component to be replaced.

25.     More specifically, Defendant's Federal Admissions include concessions that because "the LCD panels and polarizers are extremely sensitive to heat":

- "The LCD panels and polarizers degrade with use – primarily as a result of exposure to heat and light energy generated by the lamp";

- "It is the optical engine equivalent of normal 'wear and tear.' When those parts are degraded too much – when they wear out – they must be replaced or the television discarded".

- "Any increase in heat will materially shorten the LCD panels' and polarizers' respective lives"; and

- "This degradation is normal and expected".

However, at no time did Defendant inform Plaintiff or members of the Class that such problems would occur within a short period of time after purchase and that Defendant considered such degradation as a result of the Defect to be "normal wear and tear," and require consumers to expend approximately $1,000.00 to replace the Optical Engine. Had consumers in fact been notified of these characteristics of the Televisions, they would either of have not purchased the Televisions in the first instance or paid a lesser amount for them.

26.     Defendant's institutional awareness of the problems of heat and radiation in its Optical Engine design is demonstrated by disclosures made by Defendant's engineers in connection with various patent applications it filed with the United States Patent Office. Such filings disclose the Defendant's knowledge as early as October 8, 1998, of these problems inherent in its Optical Engine design and countermeasures intended to protect against them. These patent applications, including US Patent 6,256,083 and US Patent 6,535,267, disclose the destructive nature of the heat and radiation generated in an LCD rear projection televisions optical engine, and seek to avoid damage through various methods – none of which were actually implemented in the Televisions sold to the public in the United States. Similarly, prior to the sale of the Televisions, Defendant had successfully designed a LCD rear projection television incorporating liquid cooling to protect against

9

excess heat, but liquid cooling was not incorporated into the Televisions sold to consumers in the United States, which failed as a result.

27.     Despite Defendant's institutional knowledge and awareness of the Defect, and its Federal Admissions in judicial filings, Defendant's Customer Service personnel *continue* to deny to consumers complaining about the Defect that this characteristic and inherent Defect in the Optical Block even exists.  Once a consumer's one-year written warranty has expired, Defendant disclaims any and all liability for the Defect, leaving the consumer to bear the cost of this expensive repair on his or her own, or purchase a new replacement television.

28.     Plaintiff and the members of the Class had no knowledge of the cause of the Defect and did not suspect, nor did they have reason to suspect, that the Defect was caused by Defendant's wrongdoing.  Plaintiff and the members of the Class could not have known or reasonably discovered, nor had reason to know of, the Defect created by Defendant.  Further, they could not have known or reasonably discovered that the Televisions they purchased were defective or that the cause of the harm suffered by Plaintiff and the members of the Class was directly attributable to the wrongdoing by Defendant alleged herein.

29.     Plaintiff's and the Class members' lack of knowledge regarding the cause of their damages were due in large part to Defendant's concealment of material facts regarding the Defect. The fraudulent acts of concealment by Defendant included the intentional concealment and refusal to disclose facts known to Defendant about the Defect in the Televisions, which Plaintiff and the members of the Class could not reasonably have learned, known of, or otherwise discovered.  In fact, Plaintiff and the members of the Class did not know, nor could they have had reason to know, that

Defendant's overall malfeasance in designing, manufacturing, distributing, marketing and selling of its Televisions was a cause of their damage.

30.     Defendant has not honored its warranty obligations under either its own written warranty or applicable warranty laws.  To date, despite persistent consumer demands, Defendant has been unable or unwilling to develop or offer to consumers any permanent fix for the Defect.  Instead, for consumers who experience the Defect while under warranty, Defendant has offered only to replace the Optical Blocks with identical units containing – but not yet manifesting -- the Defect, but have done nothing to correct the underlying cause of the Defect.  As a result, although the newly installed Optical Blocks serve as a temporary "Band-Aid" solution, the underlying Defect remains, and will cause the video and color anomalies to reappear anywhere from several months to two years after installation, depending upon usage.

31.     Defendant has known about the Defect contained in the Televisions since almost immediately after their introduction to the market and likely even earlier.  Despite this fact, Defendant has continued to misrepresent to consumers that the Televisions provide excellent video quality and have omitted to disclose to consumers the existence of the Defect in connection with the marketing and sale of the Televisions or thereafter.  Instead, Defendant continued to design, manufacture, market, distribute, and sell the defective Televisions as if they were unaware of the Defect.  However, at that time, Defendant knew that the Televisions would not be effectively tested for the Defect after they left Defendant's control and it knew that its express representations about the Televisions would be relied upon by end users and Defendant's distributors and retailers.  No reasonable consumer would have purchased any of the Televisions had they known the truth concerning these material facts.

11

32.     Defendant, as a designer, manufacturer, marketer, distributor and seller, warranted, either expressly or by implication, that the Televisions being sold to the general public were not inherently defective, and were reasonably suited for their intended purpose. Defendant breached the warranty by doing so, and Defendant made and/or allowed these misrepresentations to be made with the intent of inducing Plaintiff and the members of the Class to enter into agreements to purchase the Televisions. If Plaintiff and the members of the Class had known the true facts, they would not have purchased the Televisions, or paid as much as they did for the Televisions.

33.     In addition, Defendant's express warranty did not include a conspicuous statement about the Defect, or the fact that the Optical Engines contained in the Televisions were expected to degenerate and fail and require expensive replacement shortly after the end of the warranty period but well before the end of the expected useful life of the Televisions. As such, Defendant's limits on its express warranty are unenforceable as it knowingly sold a defective product without conspicuously informing consumers about the Defect making its express warranty unconscionable. As a result, Plaintiff and the members of the Class did not receive the goods expressly warranted by Defendant, namely, fully functioning televisions free from defect.

34.     Defendant supplied written limited warranties to consumers which it breached, and failed to honor. The time limitations contained in those limited warranties were also unconscionable and grossly inadequate to protect Plaintiff and the other members of the Class. Among other things, Plaintiff and the members of the Class had no meaningful choice in determining those time limitations; the terms of the limited warranties unreasonably favored Defendant over consumers; a gross disparity in bargaining power existed as between Defendant and Plaintiff and the members of the Class; and Defendant knew the Televisions were defective at the time of sale and would fail well

12

before their expected useful lives had ended, thereby rendering the time limitations insufficient and inadequate.

35.     Despite its knowledge of the Defect, at all relevant times, Defendant continued to misrepresent to consumers that the Televisions provide excellent video quality and omitted to disclose to consumers the existence of the Defect or cure the Defect at the design and/or manufacturing stage.  Again, none of these consumers would have purchased the Televisions had they known of this material fact.

36.     The Televisions were sold to distributors and consumers with the knowledge and intent that the Televisions be used for the benefit of consumers.  Defendant and its distributors sold the defective Televisions to Plaintiff and the members of the Class in the course of their business.

37.     The Televisions were not altered by Plaintiff, the members of the Class, Defendant's distributors or other personnel.  The Televisions were defective when they left the exclusive control of Defendant and Defendant knew the Televisions would be used without additional tests for defects. The Televisions were defective and unfit for their intended purpose and Plaintiff and the members of the Class did not receive the goods as warranted.

38.     By engaging in the above described conduct Defendant committed acts and omissions with actual malice and accompanied by a wanton and willful disregard of persons, including Plaintiff and members of the Class, who foreseeably might by harmed by those acts and omissions.

39.     As a direct result of Defendant's actions set forth herein, Plaintiff and the consumers who comprise the class who have purchased the Televisions have suffered injury in fact, have been damaged and have suffered a loss of money or property for having paid thousands of dollars for a

product that does not, cannot, and will not, work as represented and that is now worth substantially less than what consumers paid and what a non-defective Television would be worth.

40.     Not only has Defendant not been forthright with the Class regarding the existence of the Defect or the expected degeneration of the Optical Engines, but also it has additionally failed to preserve, protect, and produce documents and other evidence which would be relevant to the facts herein, despite ongoing litigation.  For example, the Chief Engineer of Quality Assurance of Defendant's plant which assembled the Televisions conceded in his deposition that he purposefully deleted electronic documents relating to problems with the Televisions despite knowing of their relevance to ongoing litigation, and then ran a computer program on the electronic media in an attempt to make forensic recovery of those documents more difficult. Following the presentation of evidence of Defendant's discovery misconduct, a Federal United States Magistrate Judge made a finding of spoliation on Defendant's part in the ongoing and above-referenced case of *In Re Hitachi Television Optical Block Cases*, U.S.D.C Case No. 08 CV 1746 DMS (NLS) (*see* Spoliation Order, attached as Exhibit "1").

<u>AS AND FOR A FIRST CAUSE OF ACTION</u>

(Violation of GBL §§ 349 and 350)

41.     Each of the above allegations is incorporated herein.

42.     The marketing and promotional efforts undertaken and disseminated by Defendant constitute advertising devices, assertions, representations or statements concerning its products which are untrue, deceptive and misleading, in a material respect and which were known, or by the exercise of reasonable care should have been known, to be untrue, deceptive or misleading, in

violation of GBL § 349.

43.     Defendant knew or should have known that its conduct and representations implied that the Televisions provide excellent video quality, by expressly stating so in its user manuals and promotional literature.  These claims were deceptive and misleading to the consuming public, and created an artificially high demand and price for the Televisions, which Defendant could not otherwise command absent these misrepresentations.

44.     Defendant should have known that the foregoing representations were false, incomplete and misleading at the time they were made to Plaintiff and Class members.

45.     Plaintiff and Class members were ignorant of the falsity of these statements and reasonably believed them to be true.

46.     Plaintiff and the Class reasonably believed Defendant's representations, and reasonably relying on the truth and completeness of those representations, Plaintiff and the Class purchased the Televisions and have been damaged.

47.     As a result of the foregoing, Plaintiff and the Class have suffered damage.

## AS AND FOR A SECOND CAUSE OF ACTION

### (Breach of Implied Warranties)

48.     Each of the above allegations is incorporated herein.

49.     Implied in the contract for sale of the Televisions are warranties of merchantability that, amongst other things, the Televisions would pass without objection in the trade under the contract description and were fit for the ordinary purposes for which consumers require and use such products.

15

50.     The Televisions owned by and the members of the Class, which possess the Defect, did not pass the standard of merchantability and fitness for a particular purpose since they were, among other things, unusable for their ordinary and intended purposes.

51.     As a result of the foregoing, Plaintiff and the Class have suffered damage.

### AS AND FOR A THIRD CAUSE OF ACTION

(Breach of Express Warranties)

52.     Each of the above allegations is incorporated herein.

53.     The defective Televisions are goods as defined by New York law.

54.     Defendant, as the designer, manufacturer, distributor and/or seller expressly warranted that the Televisions being sold to the general public were not inherently defective.

55.     Defendant's descriptions of the Televisions became part of the bases of the bargains between consumers and Defendant , creating express warranties that the product purchased by Plaintiff and the Class would conform to Defendants' representations.

56.     Defendant's affirmations of fact and/or promises relating to the Televisions created express warranties that the products purchased by Plaintiff and the Class would operate properly and without defects, and would therefore portray video without extraneous artifacts that would impair the viewing of the video program.  Defendant breached the express warranty in that the Televisions did not conform to the promises or affirmations of fact made by Defendant to Plaintiff and members of the Class.

57.     Further, Defendant breached its agreement and express warranty by allowing misrepresentations to be made and/or omitting information concerning the true condition of the Televisions with the intent of making Plaintiff and the members of the Class enter into agreements to purchase the Televisions.   Defendant's express warranty did not include a conspicuous statement about the defective Optical Blocks and the unusual early failure of the Optical Blocks.

58.     If Plaintiff and the members of the Class had known the true facts, they would not have purchased the Televisions or paid as much as they did for the Televisions.

59.     Defendant's limits on their express warranty are unenforceable as Defendants knowingly sold a defective product without conspicuously informing consumers about the Defect, and, as such, the express warranty was unconscionable.  As a result, Plaintiff and the members of the Class did not receive the goods expressly warranted by Defendant.

60.     The time limits contained in Defendant's express warranty were also unconscionable and grossly inadequate to protect Plaintiff and the members of the Class.  Among other things, Plaintiff and the members of the Class had no meaningful choice in determining those time limitations; the terms of the limited warranties unreasonably favored Defendant over members of the Class; a gross disparity in bargaining power existed as between Defendant and Class members; and Defendant knew or should have known that the Televisions were defective at the time of sale and would fail well before their useful lives, thereby rendering the time limitations insufficient, inadequate, and unconscionable.

61.     As a result of the foregoing, Plaintiff and the Class have suffered damages.

<u>AS AND FOR A FOURTH CAUSE OF ACTION</u>

(Violation of the Magnuson-Moss Act (15 U.S.C. §2301 et seq.))

62.     Each of the above allegations is incorporated herein.

63.     Plaintiff and the Class are consumers as defined in 15 U.S.C. §2301(3).

64.     Defendant is a supplier and warrantor as defined in 15 U.S.C. §2301 (4)(5).

65.     The Televisions are consumer products as defined in 15 U.S.C. §2301(6).

66.     By reason of Defendant's breach of its implied warranties and express written warranties stating that the Televisions would operate properly, were free from material defects, and that Defendant would repair or replace any such defects, Defendant has violated the statutory rights of Plaintiff and the Class pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §2301 et seq., thereby damaging Plaintiff and the Class.

**WHEREFORE,** Plaintiff and the Class respectfully request that this Court enter judgment as follows:

a.     Declaring that this action is properly maintainable as a Class action and certifying Plaintiff as Class representative;

b.     Issue a permanent injunction restraining Defendant, its employees, agents and successors from deceptively selling defective Pioneer DVD players;

c.     Issue an Order requiring the Defendant to make corrective disclosures;

d.     Awarding Plaintiff and the Class compensatory damages;

e.     Awarding Plaintiff and the Class treble damages;

f.     Awarding Plaintiff and the Class costs of this action, including reasonable attorneys' fees and expenses;

h.      Awarding Plaintiff and the Class such other and further relief as the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff and the Class hereby demand a trial by jury of all issues.

Dated: February __, 2011
       New York, New York

19

LOCAL COUNSEL

By:  Robert B. Calihan
CALIHAN LAW PLLC
16 West Main Street
Suite 761
Rochester, New York  14614
Telephone: (585) 281-2593
Facsimile: (585) 232-5009

MILBERG LLP
Sanford P. Dumain
Peter Safirstein
Leigh Smith
Jennifer S. Czeisler
One Pennsylvania Plaza
New York, NY  10119
Telephone: (212) 594-5300
Facsimile: (212) 868-1229

LAX LLP
Robert I. Lax
380 Lexington Avenue, Suite 3100
New York, NY 10168
Telephone: (212) 818-9150
Facsimile:  (212) 208-4309

LANGE & KONCIUS, LLP
Joseph J.M. Lange
Jeffrey A. Koncius
222 North Sepulveda Blvd., Suite 2000
El Segundo, CA 90245
Telephone: (310) 414-1880
Facsimile:  (310) 414-1882

*Attorneys for Plaintiff*

STATE OF NEW YORK

| Court, County of | Index No. | Year |
| --- | --- | --- |



Served
By

www.servico.com

Specialists in all
Legal papers

Attorney(s) for

Service of the within

is admitted this                day of

........................................................

Attorney(s) for

(    ) **NOTICE OF ENTRY**

    Please take notice
    that an                                                              of which the within is a copy, was duly granted in the
    within entitled action on the                day of                            ,                    , and duly entered in the office of the Clerk
    of the County of                                    on the                            day of

(    ) **NOTICE OF SETTLEMENT**

    Please take notice
    that an order

of which the within is a true copy will be presented for settlement to the Hon.

one of the judges of the within named Court, at

on the                    day of

Dated,

                                                 Yours, etc.



